IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REBEKAH RUSSELL,

        Plaintiff,                        No. CIV S-05-2001 JFM

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.                <u>ORDER</u>

_____/

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand, and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated April 18, 2005, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of multiple sclerosis[2] and optic neuritis[3], but that these impairments do not meet or medically equal a listed impairment; plaintiff's allegations regarding her limitations were not totally credible;

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[2] Multiple sclerosis is an autoimmune disease that affects the central nervous system and can cause loss of vision, fatigue and weakness. http://en.wikipedia.org/wiki/Multiple_sclerosis

[3] Optic neuritis is the inflammation of the optic nerve that may cause complete or partial vision loss. http://en.wikipedia.org/wiki/Optic_neuritis

2

plaintiff had the residual functional capacity to perform the physical exertion required for light work that does not involve far acuity or full visual fields and which does not involve concentrated exposure to hazards; plaintiff's past relevant work as a supervisor and fast food worker did not require the performance of work-related activities precluded by her residual functional capacity; plaintiff's severe impairments do not prevent her from performing her past relevant work; and plaintiff is not disabled. Administrative Transcript ("AT") 20.

Plaintiff contends that the ALJ committed two errors. First, plaintiff argues that the ALJ erred in his finding that plaintiff was less than fully credible. Second, plaintiff contends that the ALJ erred in his finding that plaintiff was capable of performing her past relevant work.

II. <u>Standard of Review</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. <u>Copeland v. Bowen</u>, 861 F.2d 536, 538 (9th Cir. 1988) (citing <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Id.</u>; <u>see also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u>

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III.  Analysis

    a.  Substantial Evidence Supports the ALJ's Credibility Determination.

The ALJ found that plaintiff was not fully credible.  According to the ALJ, Plaintiff's subjective complaints of problems with her eyesight and fatigue were not supported by evidence in the record.  This finding was not in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ noted that plaintiff complained of vision loss, as well as pain and weakness caused by her multiple sclerosis.  AT 19.  After determining that there was objective medical evidence of a severe impairment, the ALJ found these complaints to be not fully credible.  Id.  According to the ALJ, plaintiff's complaints about the impairments caused by her multiple sclerosis that were made at the administrative hearing were inconsistent with other parts of her testimony, or previous statements she had made to her doctors and examining physicians.  Id.  Furthermore, plaintiff's claims about the extent of her impairment were not supported by the medical record or plaintiff's own descriptions of her daily activities.  Id.

The ALJ found plaintiff capable of performing light work that does not involve good far acuity or full visual fields and which does not involve concentrated exposure to hazards.  AT 18.  Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Plaintiff complains that this assessment of her residual functional capacity fails to capture the full extent of her visual limitations; in particular, her difficulty reading fine print or maintaining extended visual focus in her near visual field.  (Pl.'s Mot. Summ. J. 9-11.)

1    The ALJ's conclusion about plaintiff's functional capabilities is consistent with
2 the most restrictive State Agency opinion contained in the record.  The ALJ repeated the State
3 Agency findings made in their initial assessment on April 14, 2004.  AT 156-163.  However, a
4 later opinion given on June 10, 2004, found no limitations in plaintiff's visual abilities.  AT 228-
5 235.  To this opinion, the ALJ gave no weight because the record evidence demonstrated that
6 plaintiff suffered from multiple sclerosis and had some fluctuation in the levels of visual
7 impairment that she suffered as a result.  AT 18.  These medical opinions are the only functional
8 assessments contained in the record.

9    As it concerned plaintiff's visual impairment, the ALJ expressed some concern
10 that plaintiff's credibility was undermined by allegations from her doctors that she was
11 malingering.  Id.  Multiple medical sources reported that plaintiff was exaggerating her
12 symptoms of vision loss or malingering.  The initial concern of malingering came from Dr. Lin,
13 an ophthalmologist, after he examined plaintiff for the fourth time on September 18, 2003.  AT
14 300-301.  Dr. Lin noted that plaintiff's examination was inconsistent with visual field results
15 given that, in spite of plaintiff's complaints, she had little difficulty performing daily activities or
16 negotiating within her surroundings during the examination.  AT 300.  Dr. Lin relayed his
17 concerns to Dr. Featherstone, a treating neurologist, AT 242, and they appeared in treatment
18 notes made by Dr. Davis, a second treating physician.  AT 184, 188.  Indeed, while Dr. Davis
19 ultimately found some impairment, he expressed to plaintiff and her mother his concerns about
20 malingering prior to endorsing plaintiff's claim for continued receipt of disability benefits.  AT
21 184.

22   Both Dr. Lin and Dr. Birk opined that plaintiff suffered from functional vision
23 loss.  AT 184, 188, 300.  A diagnosis of functional vision loss includes a component of
24 malingering, and is used when other organic causes for complained of symptoms cannot be
25 identified.  See http://www.merck.com/mmpe/sec09/ch098/ch098b.html.  Only Dr. Lin made a
26 definitive statement that plaintiff was malingering, failing to diagnose any organic problem with

plaintiff's vision that could cause the symptoms about which she complained. AT 300. Given his specialty, this opinion may properly carry greater weight in the ALJ's findings. See 20 C.F.R. 416.927(d)(1).

Despite their reiteration of Dr. Lin's concerns, Dr. Davis, Dr. Featherstone, and a third treating physician, Dr. Birk, a neurologist, administered treatment for plaintiff's multiple sclerosis and the vision problems plaintiff reported as a result. These actions are inconsistent with an absolute belief that plaintiff was malingering. This inconsistent medical evidence and treatment history cannot be considered affirmative evidence of malingering sufficient to dismiss plaintiff's complaints without comment. See Morgan, 169 F.3d at 599. The ALJ makes no such finding. However, malingering is a relevant factor to consider in assessing plaintiff's credibility and can be a specific and legitimate reason to discount plaintiff's subjective complaints. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also Smolen, 80 F.3d at 1284 (holding that the ALJ is permitted to utilize the ordinary techniques of credibility evaluation); 20 C.F.R. 416.929; SSR 96-7p.

The ALJ failed to find any significant medical evidence supporting plaintiff's complaints of disabling near visual acuity problems. In mid-2003, Doctors reported that plaintiff's condition would improve in six months, AT 184, 300, or was stable, AT 261. Dr. Featherstone initially noted that plaintiff complained of being unable to drive or read very well; however, he made no finding of any optic impairments. AT 182. Dr. Davis noticed no obvious visual defects. AT 188. Indeed, two weeks after beginning treatment, plaintiff reported to an ophthalmologist, Dr. Brannon, that her vision had improved. AT 142. She repeated this assessment to Dr. Birk. AT 241. According to plaintiff, this improvement stabilized by the time she was seen by Dr. Featherstone. AT 264. Indeed, on his final evaluation of plaintiff nearly a year after his initial opinion that plaintiff would improve in six months, Dr. Featherstone wrote that plaintiff's vision was stable and made no assessment of future treatment specifically tailored to her vision, addressing instead general treatment of her multiple sclerosis as well as other

complaints made by plaintiff during the examination, such as side-effects from her medications and lifestyle changes.  AT 261.

The ALJ also found a lack of objective evidence supporting the full extent of plaintiff's complaints of weakness and fatigue.  AT 19.  Dr. Featherstone made no findings of any weakness or fatigue.  AT 182, 261.  Indeed, upon an initial evaluation, plaintiff did not report to Dr. Featherstone any physical symptoms other than problems with her vision.  AT 182.  Dr. Davis made no report that plaintiff complained of fatigue or weakness.  AT 184, 188.  Dr. Birk made no findings to support plaintiff's complaints of physical pain.  AT 238-247.

The lack of objective medical evidence to corroborate plaintiff's subjective complaints of vision problems or weakness and fatigue, in and of itself, is not a proper basis to discredit plaintiff.  See Smolen, 80 F.3d at 1285.  However, the ALJ is permitted to utilize the ordinary techniques of credibility evaluation.  Id. at 1284; see also 20 C.F.R. 404.1529, SSR 96-7p.  The ALJ must consider the factors set out in SSR 88-13, including the observations of treating and examining physicians about the nature and onset of plaintiff's symptoms.  SSR 88-13; see also Bunnell, 947 F.2d at 346.  Given the other bases cited by the ALJ for his findings along with the lack of objective evidence, the ALJ's conclusion that plaintiff was not credible when she complained of visual impairment and weakness and fatigue greater than that found in the residual functional capacity assessment was not in error.

The ALJ found that the minimal objective evidence of significant impairment led Dr. Featherstone to advise plaintiff against only driving.  AT 19.  Neither Dr. Featherstone, nor any of plaintiff's physicians, made a report to the Department of Motor Vehicles, a requirement under California law for a physician who believes a patient can no longer operate a vehicle safely.  CAL HEALTH & SAFETY CODE §103900.  Indeed, the medical record does not indicate that any doctor prohibited plaintiff from driving because of her condition.  Rather, plaintiff, after consultation with her doctor and mother, chose not to drive any longer.  AT 365.  Furthermore,

/////

there is no indication that plaintiff's treating physicians advised against any daily activities that plaintiff participated in involving near acuity, such as cooking or cleaning.

The ALJ cited Dr. Featherstone's advisement that plaintiff not drive as a basis for his conclusion that plaintiff's complaints of near visual acuity problems was not credible. According to the ALJ, driving requires far vision. AT 19. As a result, Dr. Featherstone's advisement that plaintiff avoid driving, AT 132, 261, was evidence that only her far visual acuity was affected by her impairment. AT 19. The ALJ's assessment of the skills necessary to safely drive may be oversimplified given the hazards that can approach from any direction on the road. Compare California Driver's Handbook, http://www.dmv.ca.gov/pubs/hdbk/pgs33thru41.htm#visualsearch (recommending drivers focus their attention while driving 10 to 15 seconds in front of their car to avoid accidents) with http://www.dmv.ca.gov/pubs/hdbk/pgs79thru81.htm#vision (stating that drivers must have good vision). However, his conclusions about plaintiff's credibility in light of the evidence of malingering and other medical assessments of plaintiff's condition contained in the record was not in error.

The record also contains evidence of plaintiff's daily activities that support the doctors' assessments of improvement and stabilization in plaintiff's vision and are inconsistent with plaintiff's subjective complaints. AT 19. These daily activities also undermined plaintiff's complaints of physical weakness and fatigue. Plaintiff consistently testified that because of her vision problems she needed help reading the dials on the laundry machine, AT 351, knowing when food was cooked, AT 352, or reading the labels and prices on items in the store, AT 354.

However, plaintiff's description of her daily activities does not support an impairment severe enough to preclude these activities. Plaintiff testified that she cared for her two year old son, AT 359, with all of the duties that entails, including changing diapers, id., making the bed, laundry, and housecleaning, AT 362. While they certainly involve manipulation of objects in the near visual field, plaintiff did not state that any of these tasks were affected by her vision problems. Plaintiff also made daily meals for her son and husband. AT

101. The evidence in the record indicates that plaintiff had no issues manipulating the dials on the stove, oven or microwave. AT 352. These inconsistencies between plaintiff's words and actions are substantial evidence upon which the ALJ may base his credibility finding. See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)(upholding adverse credibility finding where there was evidence of malingering and claimant's testimony was not consistent.)

It is true that plaintiff's ability to engage in some daily activities does not automatically compromise her subjective complaints. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled). However, the record indicates that plaintiff spent a substantial part of her day performing activities inconsistent with her subjective complaints. See Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and occasionally care for a friend's child sufficient to undermine complaints of pain). The daily activities performed by plaintiff are a specific and legitimate reason relied upon by the ALJ to assess plaintiff's credibility.

The ALJ also found inconsistencies in plaintiff's own description of her visual limitations. AT 19. At the hearing, plaintiff complained of difficulties with simple, close visual tasks. AT 351, 352, 354. However, as properly noted by the ALJ, plaintiff also stated that far visual acuity was worse. AT 19, 366. While plaintiff's brief attempts to characterize this line of questioning as an issue of relativity, arguing that plaintiff actually meant that her far visual acuity was worse than her already poor near acuity, (Pl.'s Mot. Summ. J. 10), the ALJ does not mischaracterize the testimony. The medical evidence described above gives little indication of any severe impairment with near acuity. In addition, plaintiff reported being able to read the two magazines that arrived at her apartment, AT 357, and being able to read up to an hour. AT 365.

/////

/////

Other inconsistencies exist in the medical record. Plaintiff reported to Dr. Birk during an examination on August 14, 2003, that she did not smoke. AT 245. However, medical records from before and after the examination showed this not to be true. AT 148, 212.

The ALJ properly evaluated plaintiff's credibility. Specific and legitimate reasons supported the ALJ's conclusion that plaintiff was less than fully credible. Evidence of malingering, along with a lack of medical evidence to support the full extent of plaintiff's claims and plaintiff's own daily activities undermine plaintiff's complaints of visual problems and weakness and fatigue. The ALJ's finding was not in error.

### B. The ALJ Properly Found Plaintiff Capable of Performing Her Past Relevant Work.

The ALJ found that plaintiff had the residual functional capacity to perform light work that does not involve good far acuity or full visual fields and which does not involve concentrated exposure to hazards. AT 18. Given this assessment of plaintiff's capabilities, the ALJ found plaintiff able to perform her past relevant work. AT 19. This finding is not in error.

The primary argument advanced by plaintiff concerns the ALJ's analysis at step four of the sequential evaluation. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. S.S.R. 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e)." Pinto, 249 F.3d at 844-45. The claimant must be able to perform: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Id. at 845 (citing S.S.R. 82-61). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Id. (citing S.S.R. 82-62).

1    Plaintiff's past work included positions as a supervisor and at a fast food
2 restaurant.  AT 75, 77.  "Social Security Regulations name two sources of information that may
3 be used to define a claimant's past relevant work as actually performed: a properly completed
4 vocational report, S.S.R. 82-61, and the claimant's own testimony, S.S.R. 82-41."  Id.  "[T]he
5 best source for how a job is generally performed is usually the Dictionary of Occupational
6 Titles."  Id. at 845-46 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) and 20
7 C.F.R. §§ 404.1566(d) and 416.966(d)).  Under the Dictionary of Occupational Titles (hereinafter
8 "DOT"), supervisor is classified as 691.130-010.  Fast food worker is classified as 311.472-010.
9 The ALJ found that both positions are light duty and neither requires far visual acuity, full field
10 of vision, or exposure to hazard.  See DOT.

11    While plaintiff contends that her residual functional capacity includes limitations
12 relating to her near visual acuity or full vision field as well as weakness and fatigue, she presents
13 no evidence supporting that conclusion other than her subjective complaints.  As explained in
14 detail above, the ALJ properly discounted these complaints of vision problems and weakness and
15 fatigue.  Furthermore, records and other evidence, including the assessment of the State Agency,
16 AT 162, the findings of plaintiff's treating physicians, and plaintiff's testimony about her daily
17 activities, support the ALJ's assessment of plaintiff's ability to perform light work with
18 limitations on far visual acuity or full fields of vision and exposure to hazards.  There was no
19 error in finding plaintiff could still perform her past relevant work.  See Sanchez v. Secretary of
20 HHS, 812 F.2d 509, 511 (9th Cir. 1987)(finding plaintiff not disabled if he or she can perform
21 past work as performed in the national economy).
22 /////
23 /////
24 /////
25 /////
26 /////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied; and

2. The Commissioner's cross motion for summary judgment is granted.

DATED: December 19, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

ggh13/Moulds Social Security Cases
Russell.2001.ss.wpd